IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JULIE A. SU, Acting Secretary of Labor, United States Department of Labor,<br><br>   Plaintiff,<br><br>vs.<br><br>TTM INCORPORATED DBA DIAMONDHEAD SPRINKLERS, a corporation; and TOBY MANNELLA, an individual,<br><br>   Defendants. | CIVIL NO. 24-00181 DKW-KJM<br><br>FINDINGS AND RECOMMENDATION TO DENY ACTING SECRETARY'S PETITION TO ENFORCE ADMINISTRATIVE SUBPOENAS *DUCES TECUM* ISSUED BY THE WAGE AND HOUR DIVISION OF THE UNITED STATES DEPARTMENT OF LABOR AND TO EQUITABLE [SIC] TOLL THE RUNNING OF THE FLSA' [SIC] STATUTE OF LIMITATIONS FROM AUGUST 24, 2023 |

FINDINGS AND RECOMMENDATION TO DENY ACTING SECRETARY'S PETITION TO ENFORCE ADMINISTRATIVE SUBPOENAS *DUCES TECUM* ISSUED BY THE WAGE AND HOUR DIVISION OF THE UNITED STATES DEPARTMENT OF LABOR AND TO EQUITABLE [SIC] TOLL THE RUNNING OF THE FLSA' [SIC] STATUTE OF LIMITATIONS FROM AUGUST 24, 2023

On April 22, 2024, Petitioner Julie A. Su, Acting Secretary of Labor, United States Department of Labor ("Acting Secretary"), filed a Petition to Enforce Administrative Subpoenas *Duces Tecum* Issued by the Wage and Hour Division of the United States Department of Labor and to Equitable [sic] Toll the Running of the FLSA' [sic] Statute of Limitations from August 24, 2023 ("Petition"). ECF No. 1. The Court elects to decide the Petition without a hearing pursuant to Rule 7.1(c) of the Local Rules of Practice for the United States District Court for the

District of Hawaii. After carefully considering the Petition, applicable law, and record in this case, the Court FINDS AND RECOMMENDS that the district court DENY the Petition for the reasons set forth below.

## BACKGROUND

I.  Factual Background

The Court takes the following facts from the Petition. Respondent Toby Mannella ("Mr. Mannella") has owned and operated Respondent TTM Incorporated DBA Diamondhead Sprinklers ("TTM") at all relevant times. ECF No. 1 at 3 ¶ 3. In or around May 2023, the Honolulu District Office, Wage and Hour Division, United States Department of Labor, opened an investigation of Mr. Mannella and TTM (collectively, "Respondents"). *Id.* ¶ 5. The purpose of the investigation was to determine whether Respondents, or any person acting on their behalf, violated the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq*. *Id.* (citation omitted).

On or around August 10, 2023, Wage and Hour Regional Administrator Ruben Rosalez ("RA Rosalez") issued an administrative subpoena duces tecum ("Subpoena #1") to TTM. *Id.* ¶ 6 (citation omitted). On August 16, 2023, a Wage and Hour investigator sent a copy of Subpoena #1 to TTM via certified and regular U.S. mail. *Id.* at 3–4 ¶ 6 (citation omitted). Subpoena #1 required TTM to produce responsive documents by August 24, 2023. *Id.* at 4 ¶ 9 (citation omitted).

On or around January 30, 2024, RA Rosalez issued two additional administrative subpoenas duces tecum, one to TTM ("Subpoena #2") and one to Mr. Mannella ("Subpoena #3"). *Id.* ¶ 7 (citation omitted). On February 1, 2024, Wage and Hour Investigator Noe Soltero ("WHI Soltero") sent Subpoena #2 and Subpoena #3 in "separate mailings" to TTM and Mr. Mannella via certified and regular U.S. mail. *Id.* (citation omitted).

In addition, on February 2, 2024, WHI Soltero and Wage and Hour technician Eric Daido ("WHT Daido") personally served a woman named Alyssa Manila ("Ms. Manila") with copies of Subpoena #2 and Subpoena #3. *Id.* (citation omitted). According to WHI Soltero, Ms. Manila "orally represented to them that [Mr. Mannella] gave her permission over a phone call to accept service on behalf of TTM and Mannella." *Id.* (citing ECF No. 1-4 at 2–3 ¶ 6). Subpoena #2 required TTM to produce responsive documents by February 23, 2024. *Id.* at 5 ¶ 10 (citation omitted). Subpoena #2 required Mannella to also produce responsive documents by February 23, 2024. *Id.*

Neither TTM nor Mannella have provided documents responsive to Subpoena #1, Subpoena, #2, and Subpoena #3 (collectively, the "Subpoenas"). *Id.* ¶ 11.

3

II.  Procedural Background

On April 22, 2024, the Acting Secretary filed the Petition, seeking a court order to enforce the Subpoenas. On May 2, 2024, this Court issued an entering order instructing the [Acting] Secretary to file a supplement in response to the following three questions:

1. Is the [Acting] Secretary able to locate Toby Mannella? If yes, is the [Acting] Secretary able to effect personal service upon Mr. Mannella? If not, what efforts has the [Acting] Secretary made to locate Mr. Mannella?

2. Absent personal service, what authority does the [Acting] Secretary rely upon for service "by certified and regular U.S. mail"?

3. Is there any basis for Alyssa Manila's acceptance of service for TTM and Mannella beyond Ms. Manila's own statements on February 2, 2024? In particular, has Mr. Mannella authorized Ms. Manila's acceptance of service.

("05/02/2024 EO") ECF No. 6. On May 9, 2024, in response to the 05/02/2024 EO, the Acting Secretary timely filed a Supplemental Briefing to the Petition ("Supplement") and a Declaration of Senior Trial Attorney Norman E. Garcia in Support of the Supplement. ECF Nos. 7, 8.

On May 31, 2024, the Court held a status conference regarding service of the Subpoenas ("05/31/2024 Status Conference"). ECF No. 11. Norman E. Garcia, Esq., appeared on behalf of the Acting Secretary. At the 05/31/2024 Status Conference, the Court asked Mr. Garcia additional questions regarding service of

4

the Subpoenas. The Court indicated to Mr. Garcia its inclination to deny the Petition for insufficient service. In response, Mr. Garcia offered to submit additional supplemental briefing. The Court declined Mr. Garcia's offer, as the Court had already given the Acting Secretary two opportunities to respond to the Court's questions, and nothing in the Supplement or Mr. Garcia's statements at the 05/31/2024 Status Conference indicated that additional briefing would be beneficial. Despite the Court's clear instruction, the Acting Secretary subsequently filed a Second Supplemental Briefing in Support of the Motion ("Second Supplement"). ECF No. 12.

## DISCUSSION

As an initial matter, the Court addresses the Acting Secretary's Second Supplement. In reviewing the Petition, the Court had questions regarding the sufficiency of service of the Subpoenas. The Court thus issued the 05/02/2024 EO, hoping that the Acting Secretary's supplemental briefing would provide answers that removed doubt. It did not. The Acting Secretary filed the Second Supplement after the Court clearly indicated to Mr. Garcia at the 05/31/2024 Status Conference that it would not accept further briefing.

The Court acknowledges that the Second Supplement contains improved answers. While the Court does not intend to put form over substance, the substance of the Second Supplement is at odds with that of the Petition and the

5

Supplement. Most significantly, the Acting Secretary asserts in the Second Supplement that Ms. Manila's name is actually Aiza Mannella. The Acting Secretary learned this—and confirmed that Ms. Manila lives at the subject property—through a subpoena it issued to the City and County of Honolulu *after* the 05/31/2024 Status Conference. *See* ECF No. 12-1 at 8–9.

The Court will not resolve the inconsistencies in the Petition and the Second Supplement for the Acting Secretary. Given the new information presented in the Second Supplement, the Acting Secretary essentially seeks to amend the Petition. A supplemental filing is not the proper mechanism to amend the Petition.

The initial responses in the Supplement and at the 05/31/2024 Status Conference suggest that the Acting Secretary is accustomed to courts applying a cursory review to similar petitions to enforce administrative subpoenas. The assertions made in declarations and memoranda in support of such petitions, however, require scrutiny by the Court. This is especially true when the petitioner seeks significant relief like an order to show cause and tolling of the statute of limitations. Based on the foregoing, the Court disregards the Second Supplement in ruling on the Petition.

In the Supplement, the Acting Secretary asserts that service of administrative subpoenas is not subject to the requirements of Federal Rule of Civil Procedure 4. ECF No. 7 at 2. The Acting Secretary does not point to any other specific statute,

6

regulation, administrative rule, or other legal authority that governs service of an administrative subpoena. Rather, the Acting Secretary asserts: "The appropriate inquiry is whether the service satisfied due process by being 'reasonably calculated, under all the circumstances, to apprise the interested parties.'" *Id.* at 3 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)) (citing *EEOC v. Centura Health*, No. CV14M00092MSKKLM, 2014 WL 5395202, at *4 (D. Colo. Oct. 23, 2014); *Acosta v. Shingal*, Case No. 17-mc-80119-HRL, 2017 WL 9772873, at *5 (N.D. Cal. Nov. 17, 2017), *adopted by* Case No. 5:17-mc-80119-EJD, 2018 WL 1358973 (N.D. Cal. Mar. 16, 2018)).

The Court has reviewed the Acting Secretary's cited cases and finds that they are inapplicable. First, *Mullane* did not involve sufficiency of service of an administrative subpoena, and the Acting Secretary quotes language where the Supreme Court was generally discussing due process and notice. *Mullane*, 339 U.S. at 314.

Second, in *EEOC*, the EEOC asserted that service of administrative subpoenas was governed by the EEOC's Compliance Manual, the relevant portions of which were submitted to the district court. *EEOC*, 2014 WL 5395202, at *2. After analyzing the Compliance Manual, the district court concluded that the EEOC had failed to properly serve the respondent, even though the respondent had received actual notice and appeared in the action to contest service. *Id.* at *3–4

("[C]orrecting the Subpoena and serving it on the appropriate person would have taken less effort, time, and money than bringing a federal court case in an attempt to enforce the original, improperly served Subpoena."). The Acting Secretary does not submit a similar manual showing that the Acting Secretary has, at the very least, complied with the Department of Labor's directives, if any, regarding service of administrative subpoenas.

Third, in *Shingal*, seven of the ten respondents, who also received actual notice, appeared in the action to contest service of the administrative subpoenas and timely responded to the district court's order to show cause. *Shingal*, 2017 WL 9772873, at *5. The district court thus held that the respondents did not convince the court that "service of the administrative subpoenas was in any way inadequate or prejudicial." *Id.* Regarding the remaining three respondents which did not appear in the action, the district court held that the affidavits from the petitioner United States Secretary of Labor's officers were sufficient to establish a prima facie case that service was adequate. *Id.* Here, the Acting Secretary fails to convince this Court that service of the Subpoenas was sufficient such that issuing an order to show cause in the first place is warranted.

For the foregoing reasons, the Court is not persuaded by the Acting Secretary's cited cases. Even if the Court were to adopt the Acting Secretary's view of the "appropriate inquiry" as to service, the Court would conclude that the

8

Acting Secretary's service methods are not reasonably calculated, under all the circumstances, to apprise Respondents. Although the Acting Secretary mailed the Subpoenas via certified and regular U.S. mail, there is no indication that return receipts were requested or completed. There is thus no reliable confirmation that Respondents—who have not appeared—received the mailed Subpoenas.

In addition, neither the Petition nor the Supplement provides sufficient information establishing that Ms. Manila is legally authorized to accept service of Subpoenas #2 and #3 on behalf of Respondents. Stated plainly, the Acting Secretary's submissions indicate only that, while walking around Mr. Mannella's purported residence, WHI Soltero and WHD Daido were approached by a woman who identified herself as Alyssa Manila. *See* ECF No. 1-4 (Declaration of WHI Soltero) at 2–3 ¶ 6. Ms. Manila then allegedly called Mr. Mannella and represented that Mr. Mannella gave her authorization to accept service of the Subpoenas #2 and #3 on behalf of Respondents. *Id.*

WHI Soltero and WHT Daido did not confirm Ms. Manila's identity, Ms. Manila's purported relationship to Mr. Mannella, or that Ms. Manila was actually speaking to Mr. Mannella on the phone. The Court thus finds that delivering the Subpoena #2 and #3 to Ms. Manila is not reasonably calculated to apprise Respondents.

9

The Acting Secretary also contends that delivery of Subpoena #3 to Ms. Manila constitutes proper service under the Federal Rules of Civil Procedure and the Hawaii Rules of Civil Procedure. Federal Rule of Civil Procedure 4(e)(1) provides that service of a summons may be done in accordance with the state law where service is made. Fed. R. Civ. P. 4(e)(1). The Hawaii Rules of Civil Procedure allow, when an individual cannot be found, for service "by leaving copies [of the summons and complaint] at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein." Haw. R. Civ. P. 4(d)(1). This method of service is also expressly permitted under the Federal Rules of Civil Procedure. Fed. R. Civ. P. 4(e)(2)(B).

The issue with the Acting Secretary's contention, however, is that there is nothing indicating that Ms. Manila resides at the subject property. WHI Soltero and WHT Daido did not ask Ms. Manila whether she resides there. The Court notes that the Petition asserts that Ms. Manila approached WHI Soltero and WHT Daido as they were walking around the perimeter of the home, whereas the Supplement asserts that Ms. Manila walked out the front door. *Compare* ECF No. 1-1 at 4, *with* ECF No. 7 at 6. Neither of these assertions is sufficient to establish that Ms. Manila is a resident of the subject property for purposes of service of process under the Federal Rules of Civil Procedure or Hawaii Rules of Civil Procedure.

Moreover, the Court notes that, although it is not cited by the Acting Secretary, 29 C.F.R. § 18.56 allows an administrative law judge to "issue a subpoena authorized by statute or law that requires a witness to attend and to produce relevant papers, books, documents, or tangible things in the witness' possession or under the witness' control."  29 C.F.R. § 18.56(a)(1).  Section 18.56 states that service may "be made by certified mail with return receipt."  *Id.* § 18.56(b)(1).  Even assuming this regulation that governs proceedings in the United States Department of Labor, Offices of Administrative Law Judges, *see id.* § 18.10(a), also governs service of administrative subpoenas in a Department of Labor investigation, which the Acting Secretary does not assert, the Court finds that service in this case is not sufficient.  Although the Acting Secretary mailed the Subpoenas, she did not do so with a return receipt.

\\

\\

\\

\\

\\

\\

\\

\\

11

CONCLUSION

Based on the foregoing, the Court FINDS that the Acting Secretary fails to establish sufficient service of the Subpoenas. The Court thus RECOMMENDS that the district court DENY the Petition (ECF No. 1.)

IT IS SO FOUND AND RECOMMENDED.

DATED: Honolulu, Hawaii, June 25, 2024.



Kenneth J. Mansfield
United States Magistrate Judge

*Su. v. TTM Inc., et al.*, Civil No. 24-00181 DKW-KJM; Findings and Recommendation to Deny Acting Secretary's Petition to Enforce Administrative Subpoenas *Duces Tecum* Issued by the Wage and Hour Division of the United States Department of Labor and to Equitable [sic] Toll the Running of the FLSA' [sic] Statute of Limitations from August 24, 2023